FILED
2014 May-06  PM 06:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TRINETICS INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:13-cv-00712-TMP |
| | ) | |
| URS GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF BRIAN C. DAVIDENKO

1.    My name is Brian C. Davidenko.  I am competent to make this affidavit, and I do so voluntarily and based upon my personal knowledge.

2.    I am, and was at all times relevant hereto, employed by URS Group, Inc., in the capacity of Project Manager/Operations Manager.

3.    During 2010 – 2012, URS entered into a series of contracts with the United States government to provide technical support of government operations in Afghanistan.

4.    Two of these contracts are pertinent for purposes of this motion.  One contract was called Task Order (TO) 0506 ("TO 0506"), and the other was an Indefinite Demand/Indefinite Quantity (ID/IQ) contract ("ID/IQ"), commonly

- 1 -

referred to as the "CM Services" contract. A true and accurate copy of TO 0506 is attached hereto as Exhibit A-1. A true and accurate copy of ID/IQ is attached hereto as Exhibit A-2.

5.     For these two contracts, URS subcontracted most the work to be accomplished to Trinetics.[1]

6.     Trinetics mobilized personnel to Afghanistan and began performance on TO 0506 in April 2011.

7.     From the outset, Trinetics failed to provide the 11 personnel required for satisfactory performance of TO 0506.

8.     Trinetics continued to be understaffed in the performance of its subcontract TO 0506 for the balance of 2011.

9.     Despite the fact that Trinetics was understaffed in the performance of its subcontract, Trinetics monthly invoiced URS the full amount of the subcontract, as though it was adequately performing it subcontract.

10.    Based upon the invoices received from Trinetics, URS provided monthly invoices to the government. The government paid URS, and URS paid Trinetics.

11.    During the first half of 2012, URS became aware that Trinetics was having financial difficulties, which had an impact on Trinetics' ability to perform the URS projects.

12.    On or about June 1, 2012, URS notified Trinetics of URS's concern over Trinetics financial viability and stability, and its performance of the subcontracts. To help Trinetics its performance, URS made certain payment accommodations, expediting payment to Trinetics.

13.    Notwithstanding URS's support, Trinetics was not able to continue its performance of the project. On or about June 13, 2012, Trinetics notified URS by emails that Trinetics was voluntarily defaulting on its subcontracts with URS effective June 15, 2012. Deposition Exhibit 15 in this litigation is a true and accurate copy of those emails. A copy is attached hereto as Exhibit B.

14.    URS sent a letter on June 13, 2012, to Trinetics, confirming Trinetics' voluntary default.

15.    Trinetics signed the letter, acknowledging the default and agreeing to the terms of payments to be made by URS. Deposition Exhibit 16 in this litigation is a true and accurate copy of URS's letter, with Trinetics' confirmation and agreement. A copy is attached hereto as Exhibit C.

16.    By June 15, 2013, Trinetics was not longer performing on its subcontracts, and it was replaced by another subcontractor.   It was my understanding that Trinetics ceased operations and existence within a few weeks thereafter.

17.    On account of Trinetics' default, URS had to scramble personnel to the project in order to engage and activate a replacement subcontractor for Trinetics. URS flew its personnel to Bagram, and incurred expenses associated therewith.

18.    In August 2012, the government's contracting officer contacted URS, stated that URS's performance, that being the performance of Trinetics, had not satisfied the performance objectives of the contract because Trinetics was understaffed. The government demanded that URS make an equitable adjustment by refunding certain payments that the government had made to URS.   A true and accurate copy of the contracting officer's email is attached hereto as Exhibit D.

19.    In response to the government's demand for an equitable adjustment, I prepared a proposal and calculated the proposed equitable adjustment.   After further discussion with the government, we agreed on the amount of the equitable adjustment.   The equitable adjustment was a credit [deduct] to URS's contract in the amount of $310,614.11.   This was all for Trinetics' billings.   No part of it was for URS.

20.    The equitable adjustment was memorialized in Contract Modification No. 5. a true and accurate copy of which is attached as Exhibit E.

21.    URS refunded the agreed amount to the government by way of deductions from other payment applications.

22.    In January 2013, URS demanded payment from Trinetics for all costs URS had incurred in excess of Trinetics' unpaid invoices.  URS's January 22, 2013, letter to Trinetics set out the calculation of the amounts, and provided supporting documentation to Trinetics.  The demand was supplemented by URS's letter to Trinetics dated March 28, 2013, with additional supporting documentation. Trinetics did not pay anything to URS.  Deposition Exhibit 17 in this litigation is a true and accurate copy of URS's January 22, 2013, letter.  Deposition Exhibit 18 in this litigation is a true and accurate copy of URS's March 28, 2013, letter.  Copies are attached here to as Exhibits F-1 and F-2.

23.    During the course of discovery in this litigation, URS determined that it had inaccurately calculated the amount of Trinetics' unpaid invoices, with the effect of giving more credit to Trinetics and thereby decreasing URS's claim.  This mistake was corrected in URS's Response to Trinetics' First Interrogatories.

FURTHER AFFIANT SAYETH NOT.

This 2nd day of May, 2014.

Brian C. Davidenko

Sworn to and subscribed before me this 2nd day of May 2014.

Notary